IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LOUIS ROY CHAPMAN,**

    Plaintiff,

v.                                                                                                                     Civil Action No. **3:18CV597**

**PHYLLIS SMITH,** *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Louis Roy Chapman, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Chapman's Second Particularized Complaint. ("Complaint," ECF No. 27.) The matter is before the Court for evaluation pursuant to 42 U.S.C. § 1997e(c)(1) and the Motion to Dismiss filed by the Commonwealth of Virginia, K. Cosby, and Renee Woodson. For the reasons set forth below, the Motion to Dismiss will be GRANTED and the below described claims will be DISMISSED for failure to state a claim and because they are legally frivolous.

**I. Preliminary Review**

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 42 U.S.C. § 1997e(c)(1); *see* 28 U.S.C. § 1915(e)(2)(B)(i–ii);

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

28 U.S.C. § 1915A(b). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely

"conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

"Where the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint, *see Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring).

The Complaint in this matter is 42 pages long and contains 11 separate claims for relief. In this Memorandum Opinion, the Court only recites those allegations pertinent to Claims 4, 8, 9, 10, and 11.[2]

## II. Summary of Pertinent Claims and Allegations

Chapman is a white male confined in the Lawrenceville Correctional Center ("LCC"). (Compl. 2, 23.) LCC is operated by Global Experts in Outsourcing ("Geo"), a private, for profit

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling and punctuation in the quotations from Chapman's submissions. The Court corrects some, but not all, of the capitalization in the quotations from Chapman's submissions. The Court omits some of the excessive emphasis in the quotations from Chapman's submissions.

3

corporation. (*Id.* at 2.) While confined at LCC, Chapman contends that he has been the victim of "Gender Bias" and "Racial Discrimination." (*Id.* at 3.)

### A. Claim 4

Defendants Smith, Moore, and Shaw are in charge of the library at LCC. (*Id.* at 9.) Chapman notes that the library "only has a Black Authors and Spanish Language section with a plaque. There are no plaques for Caucasians . . . or any other race in the world. This is offensive, and humiliating and degrading to Chapman." (*Id.*)

Chapman brought the lack of plaques for Caucasian authors to the attention of Defendant Moore and Smith. (*Id.*) Defendant Moore became agitated and asked Chapman if he was a racist in the presence of the other inmates in the library. (*Id.*) "Moore's asking Chapman if he is racist, is racist itself." (*Id.*) "Chapman is NOT a racist and is NOT responsible for slavery." (*Id.* at 11)

Based on the foregoing allegations, Chapman makes the following claim:

Claim 4    In violation of Chapman's right to equal protection and to be free from cruel and unusual punishment, "Smith, Moore and Shaw accused Chapman of being RACIST. When a white man stands for his rights he is called racist, when blacks do it, it is their heritage." (ECF No. 97, at 7.)[3]

### B. Claims 8 through 11

Defendant Jones is the facility Ombudsman at LCC. (Compl. 1.) At LCC, Defendant Jones bears the initial responsibility for reviewing grievances to see if they meet the requirement for acceptance and processing. (*Id.* at 22.) Defendants Woodson and Jones are Regional Ombudsman for the VDOC. (*Id.* at 1.) They review Defendant Jones's decisions with respect to processing of grievances.

---

[3] Chapman's Complaint contains a long narrative of his racial grievances. However, in the Complaint, Chapman is less than clear as to which sleight Chapman perceives as giving rise to his distinct grounds for legal relief. Chapman's clearest articulation of his individual claims appears in Chapman's Response to the Motion for Summary Judgment filed by other correctional officials.

4

During his incarceration at LCC, Chapman has filed a host of informal complaints and grievances. (*See, e.g.*, ECF Nos. 1-10, 1-11, 1-14, 2-2.) Chapman contends that Defendants Jones, Woodson, and Cosby repeatedly denied him tracking numbers for his grievances when the grievance concerned black officers but provided him with a grievance number on the occasion that he complained about the conduct of a white officer. (Compl. 22.)

For example, on one occasion, Chapman wished to filed a grievance against L. Torgenson, a safety officer, for his failure to maintain the showers in a sanitary fashion. (*Id.* at 29.) The showers were moldy and dirty. (*Id.* at 31–32.) Although Defendant Torgenson sent a crew of six inmates to clean the showers, only two of the inmates worked on cleaning the showers, while the rest spent their time on the phone or watching television. (*Id.* at 30.) Chapman submitted a grievance wherein he complained that Torgenson was failing to properly maintain the showers because, *inter alia*, the concrete was coming off of the walls, there was no paint on the floors, there was mold and mildew on the walls and floors, the showers were not properly cleaned, the cleaning chemicals were not properly mixed, insufficient cleaning chemicals were provided, Torgenson failed to inspect the showers, Torgenson misappropriated the funds for cleaning the showers, et cetera. (ECF No. 2-7, at 1.) Defendant Jones refused to process the grievance because it addressed more than one issue and directed Chapman to resubmit the grievance with only one issue. (*Id.* at 2.) Chapman appealed the intake decision. (*Id.*) Defendant Woodson upheld the intake decision. (*Id.*) Because Chapman's grievance did not meet the criteria for intake, Defendant Jones refused to give it a tracking number. (Compl. 29.)

On November 22, 2017, Chapman was in the dining hall when he asked T. Sommerville, a correctional officer, "'Where are the cups?'" (*Id.* at 1, 33.) Sommerville looked directly at Chapman and said, "<u>Shit Happens Deal With It.</u>" (*Id.* at 33.) Officer T. Neville laughed at this

5

remark. (*Id.*) "Sommerville did not say this to any Black inmate, <u>only</u> to Chapman, because he is White." (*Id.* at 34.) Chapman filed a grievance concerning the above incident. (ECF No. 2–9, at 1.) Defendant Jones refused the grievance at intake because she noted that it did not cause Chapman personal loss or harm. (*Id.* at 2.) Chapman appealed that intake decision. (*Id.*) Defendant Woodson upheld the intake decision. (*Id.*)

On June 4, 2018, Chapman asked T. Sommerville if she would get someone to wipe down the table where Chapman wanted to eat because there was smeared peanut butter on the table. (Compl. 34.) "Chapman was sitting with three (3) white men. Chapman had asked the only kitchen worker, who was black. Instead, he picked up trays and wiped the table for blacks <u>only</u>. Sommerville said, 'the worker was not going to wipe <u>that</u> table.' Blatant racist and gender bias." (*Id.*)

On July 17, 2018, Chapman and another white inmate were sitting at a table that was dirty. (*Id.* at 35.) Chapman asked Correctional Officer Thomas if she could get someone to wipe the table. (*Id.*) Correctional Officer Thomas responded, "<u>I am not going to do it. I am not going to do it.</u>" (*Id.*) Chapman contends that this was a "blatant, racist act." (*Id.*) Chapman filed a grievance concerning this incident. (ECF No. 2–9, at 16.) Defendant Jones refused the grievance at intake, noting that it did not affect Chapman personally because it did not cause him personal loss or harm. (*Id.* at 17.) Chapman appealed that intake decision. (*Id.*) Defendant Cosby upheld the intake decision. (*Id.*)

In light of the foregoing allegations, Chapman raises the follow claims for relief:

Claim 8   On twenty-one (21) occasions, Defendant Jones, Woodson and Cosby denied Chapman a tracking number for his grievances that pertained to "<u>ALL</u> BLACK OFFICERS and Staff." (ECF No. 97, at 7.) Chapman contends that such actions

|  |  |
|---|---|
|  | violated his rights under the Eighth Amendment and his rights to due process and equal protection under the Fourteenth Amendment. (Compl. 22.)[4] |
| Claim 9 | (a) Defendant Torgenson's failure to keep the showers clean violated Chapmans's right under the Eighth and Fourteenth Amendments. (Compl. 33.)<br>(b) Defendant Jones "refused to give Chapman grievance tracking number for L. Torgenson, safety officer, concerning unsanitary showers." (ECF No. 97, at 8.) Such actions violated Chapman's "First and Eighth Amendment right[s] to petition the government for unsanitary showers." (*Id.* at 32.) |
| Claim 10 | "T. Sommerville said, '<u>Shit happens. Deal with it</u>,' and refused to have the table wiped clean where Chapman and other white men ate. Racism. T. Neville laughed at this racist act." (ECF No. 97, at 8.) Chapman contends that such actions violated his rights under the Eighth and Fourteenth Amendments. (Compl. 34.) |
| Claim 11 | "K. Thomas, when Chapman asked her if she would get someone to wipe off the table where Chapman and [the] white me[n] ate, yelled, "<u>I am not going to do it. I am not going to do it</u>." "My name is Thomas." (ECF No. 97, at 8.) Chapman contends that such actions violated his rights under the Eighth and Fourteenth Amendments. (Compl. 36.) |

### III. Analysis

It is both unnecessary and inappropriate to engage in an extended discussion of the lack of merit to Chapman's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))).

In this regard, Chapman has asserted throughout his Complaint that the actions of various defendants amounted to discrimination in violation of his rights under the Public Accommodations Act, 42 U.S.C. § 2000a, *et seq.* (*See, e.g.*, Compl. at 36.) However, "the Public Accommodations Act, 42 U.S.C. § 2000a, et seq., does not apply to prisons." *Lutchey v. Wiley*, No. 98–3760, 1999

---

[4] "[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Thus, Chapman's Fourteenth Amendment substantive due process claim is subsumed within his Eighth Amendment claim.

WL 645951, at *2 (6th Cir. Aug. 13, 1999) (citing 42 U.S.C. § 2000a(b)); *Patterson v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:11–CV–00943, 2012 WL 3308607, at *1 (S.D.W. Va. July 3, 2012), *report and recommendation adopted sub nom. Patterson v. W. Va. Reg'l Jail*, No. 3:11–CV–00943, 2012 WL 3295876 (S.D.W. Va. Aug. 10, 2012). Accordingly, all of Chapman's claims seeking relief under Public Accommodations Act, 42 U.S.C. § 2000a, *et seq.* will be DISMISSED as legally frivolous.

Chapman's claims against the Commonwealth of Virginia also lack merit as that entity is not a person for purposes 42 U.S.C. § 1983 and is immune from suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Accordingly, all claims against Commonwealth of Virginia will be DISMISSED as legally frivolous.

### A. Eighth Amendment Claims

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate

8

medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Chapman fails to satisfy either the objective or subjective prong for any of his Eighth Amendment claims. Chapman fails to allege facts that plausibly suggest he sustained serious physical or emotional injury from any of the challenged conditions. *De'Lonta*, 330 F.3d at 634. Furthermore, in no instance does he allege facts that indicate any defendants perceived their actions

9

subjected him to a substantial risk of serious harm. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010) (citing *Moody v. Grove*, No. 89–6650, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989)) ("Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation."); *see Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)). Accordingly, Chapman's Eighth Amendment claims recited above will be DISMISSED for failure to state a claim and as legally frivolous.

### B. Equal Protection Generally

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, Chapman must allege facts that plausibly suggest: (1) "that he has been treated differently from others with whom he is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)). If a plaintiff satisfies the above, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche,* 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Chapman also alleges the actions of the defendants violated his right to be free from discrimination under Article I, Section 11 of the Virginia Constitution. "The Virginia Constitution

affords no greater protection to be free from government discrimination than the equal protection clause in the Fourteenth Amendment, [so] the same analysis applies to [Chapman's] claims under both his federal and state law claims." *Farley v. Clarke*, No. 7:15–CV–00352, 2016 WL 8540135, at *18 n.25 (W.D. Va. Dec. 27, 2016) (citing *Lee v. York Cty. Sch. Div.*, 418 F. Supp. 2d 816, 835 (E.D. Va. 2006)); *Archer v. Mayes*, 194 S.E.2d 707, 711 (Va. 1973)), *report and recommendation adopted*, No. 7:15–CV–00352, 2017 WL 1049579 (W.D. Va. Mar. 17, 2017).

### C. Claim 4

In Claim 4, Chapman contends that his right to equal protection was violated when he asked about the absence of plaques for Caucasian authors and Defendant Moore asked if he was a racist. Initially, the Court notes that Chapman fails to allege facts that indicate he was treated any differently than any other inmate who complained about the plaques in the law library. Therefore, his equal protection claim fails at the outset. Moreover, even if one were to conclude that Defendant Moore's question was racist and abusive, that fact alone would not support an equal protection claim. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 867 (11th Cir. 2008) ("Hernandez, like all inmates, does not enjoy a fundamental right to be free of verbal abuse, so that could not support a traditional equal protection claim . . . ."); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) ("Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination 'unless it is pervasive or severe enough to amount to racial harassment.'" (quoting *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002))). Accordingly, Claim 4 will be DISMISSED for failure to state a claim and as legally frivolous.

### D. Claim 8

In Claim 8, Chapman contends that on twenty-one occasions Defendants Jones, Woodson, and Cosby violated his right to equal protection when they denied him a tracking number for his grievances that pertained to "ALL BLACK OFFICERS and Staff." (ECF No. 97, at 7.)[5] The record reflects that Defendant Jones conducted the initial intake review of grievances at LCC. Although Chapman is quick to attribute racial animus to nearly every action by prison officials, he fails to direct the Court to statements in the intake decisions of his grievances that reflect racial animus. Rather, Defendant Jones regularly refused to assign Chapman's grievances tracking numbers because she concluded that Chapman's grievances failed to pass the intake criteria because of, *inter alia*, their trivial nature. For example, Defendant Jones refused to process Chapman's trivial grievances about the refusal of staff to wipe down his table or Correctional Officer Sommerville's "shit happens," remark because Chapman was not harmed by this conduct. When Chapman appealed those intake decisions, they were upheld by Defendants Cosby and Woodson. Chapman does not direct the Court to similar insubstantial grievances or noncomplying grievances filed by black inmates or that concerned white correctional officers that were processed and received tracking numbers.

In short, Chapman fails to allege facts that plausibly suggest that Defendants Cosby and Woodson treated his grievances differently because of Chapman's race or the race of individuals named in the grievances. Moreover, Defendants Cosby and Woodson were not located at LCC and had limited interaction with individuals named in Chapman's noncomplying grievances. It is factually frivolous to suggest that their review of the intake decisions turned on research into the

---

[5] Defendant Jones filed a Motion for Summary Judgment with respect to the equal protection aspects of Claim 8. The Court will address the equal protection aspects of Claim 8 against Jones in the separate Memorandum Opinion resolving her Motion for Summary Judgment.

12

race of the correctional officials named in the grievance. Accordingly, the equal protection aspects of Claim 8 against Defendants Cosby and Woodson will be DISMISSED for failure to state a claim and as legally and factually frivolous.

Chapman also contends that Defendants Cosby and Woodson denied him due process by their failure to properly process his grievances. It is clear that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Therefore, any alleged errors in the processing of Chapman's grievances do not amount to a denial of due process. Accordingly, this aspect of Claim 8 against Jones, Cosby, and Woodson fails to state a claim and is legally frivolous and will be DISMISSED.

### E. Claim 9

The only remaining aspect of Claim 9 is Chapman's contention that Defendant Jones's failure to process his grievance pertaining to the unsanitary showers deprived Chapman of his First Amendment right to petition the Government. While prison officials cannot retaliate against an inmate for filing a grievance, they do not violate the First or Fourteenth Amendment by refusing to process a grievance or denying access to the grievance procedure altogether. *See id.* (citations omitted). Accordingly, this aspect of Claim 9 will be DISMISSED for failure to state a claim and as legally frivolous.

### F. Claim 10

In the first portion of Claim 10, Chapman contends that he was denied equal protection of the law because when he asked Correctional Officer Sommerville, "'Where are the cups?'" she looked directly at him and said, "<u>Shit Happens Deal With It.</u>" (Compl. 33.) Officer T. Neville laughed at this remark. (*Id.*) "Sommerville did not say this to any Black inmate, <u>only</u> to Chapman,

13

because he is White." (*Id.* at 34.) Chapman, however, fails to allege facts that he was treated differently than any other inmate because no other inmate complained about the lack of cups. Chapman's perceived racial slight fails to support and equal protection claim. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 459 (6th Cir. 2011); *see Lewis*, 486 F.3d at 1028.

In the second portion of Claim 10, Chapman contends that he was denied equal protection because Correctional Officer Sommerville refused to make a black kitchen worker clean off a table where Chapman was sitting with other white inmates. While Chapman insists that Correctional Officer Sommerville's inaction is attributable to racial animus, that allegation is conclusory and implausible under the facts alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). Chapman does not allege that inmates were prohibited from cleaning off their own tables. Nor does the Complaint indicate that Correctional Officer Sommerville made kitchen workers clean off any other tables at the request of other inmates. Accordingly, Chapman fails to state an equal protection claim against Correctional Officer Sommerville for her lack of action. Claim 10 will be DISMISSED for failure to state a claim and as legally frivolous.

### G. Claim 11

Chapman's equal protection claim in Claim 11 suffers from the same defects as those in Claim 10. Chapman insists that Correctional Officer Thomas's refusal to direct someone to clean off Chapman's table was a product of racial animus. Chapman does not allege that inmates were prohibited from cleaning off their own tables. Nor does the Complaint indicate that Correctional Officer Thomas made kitchen workers clean off any other tables when requested by other inmates. Accordingly, Claim 11 will be DISMISSED for failure to state a claim and as legally frivolous.

## IV. Conclusion

All claims against the Commonwealth of Virginia will be DISMISSED. All claims seeking relief under Public Accommodations Act, 42 U.S.C. § 2000a, *et seq.* will be DISMISSED. Claims 4, 9, 10, and 11 will be DISMISSED. The Eighth Amendment and due process aspects of Claim 8 will be DISMISSED against Defendant Jones, Woodson, and Cosby. The equal protection aspects of Claim 8 will be DISMISSED against Defendants Woodson and Cosby. The Motion to Dismiss (ECF No. 69) will be GRANTED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 21 September 2020
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge