IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LOUIS ROY CHAPMAN,**

    Plaintiff,

v.                                                                      Civil Action No. **3:18CV597**

**PHYLLIS SMITH,** *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Louis Roy Chapman, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action[1] alleging various violations of his constitutional rights because of what he perceives to be bias against him because he is a white male. The action is proceeding on Chapman's Second Particularized Complaint. (ECF No. 27.) The procedural history of this case has been somewhat cumbersome, due in no small part to the inartful nature of Chapman's pleadings.[2] Nevertheless, at this juncture, the bulk of Chapman's claims have already been resolved. (*See* ECF Nos. 152–55.) Presently, only a handful of claims remain, claims which were not previously addressed by

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] In his hand-written, forty-two-page Particularized Complaint, Chapman failed to delineate clearly between his various claims. (*See* ECF No. 27, at 1–42.) Chapman's clearest articulation of his individual claims appeared in a response that he filed to a motion for summary judgment that has since been resolved. (*See* ECF No. 97, at 6–8.) Having reviewed both documents, the Court will refer to this latter iteration of Chapman's claims to frame and contextualize the issues before it.

the parties or involve two unserved defendants, Phyllis Smith and D. Kreitz. Under the Prison Litigation Reform Act ("PLRA"), the Court has an ongoing duty to review and evaluate Chapman's claims. The matter is presently before the Court for evaluation of Chapman's remaining claims pursuant to 42 U.S.C. § 1997e(c)(1) and for consideration of a MOTION TO AMEND OR ALTER THE JUDGMENT (ECF No. 156) filed by Chapman, which the Court construes as a motion pursuant to Federal Rule of Civil Procedure 54(b). For the reasons set forth below, Chapman's remaining claims will be DISMISSED either for failure to state a claim or because they are legally frivolous (or both), Chapman's Rule 54(b) Motion will be DENIED, and all other outstanding motions and requests will be DENIED AS MOOT. The action will be DISMISSED.

## I. Obligatory Judicial Review

Pursuant to the PLRA this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 42 U.S.C. § 1997e(c)(1); *accord* 28 U.S.C. § 1915(e)(2)(B)(i–ii); 28 U.S.C. § 1915A(b). The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations

2

are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

"Where the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." *Beaudett v. City of Hampton*,

775 F.2d 1274, 1278 (4th Cir. 1985). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring).

## II. Summary of Remaining Claims and Allegations

Chapman is a white male confined in the Lawrenceville Correctional Center ("LCC"). (ECF No. 27, at 2, 23.)[3] LCC is operated by Global Experts in Outsourcing ("Geo"), a private, for-profit corporation. (*Id.* at 2.) While confined at LCC, Chapman contends that he has been the victim of "Racial Discrimination." (*Id.* at 3.) Chapman's remaining claims are as follows:[4]

> Claim One: Defendants Smith, Kreitz, and Shaw will not process Chapman's job application for various clerk positions because Chapman is white, and they have only hired "Black and Hispanic" clerks. (ECF No. 97, at 6.)
> (a) These actions violated Chapman's rights under the Eighth Amendment.[5]

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects that spelling and punctuation in the quotations from Chapman's submissions. The Court corrects some, but not all, of the capitalization in the quotations from Chapman's submissions. The Court omits some of the excessive emphasis in the quotations from Chapman's submissions.

[4] In prior rulings, the Court liberally construed each of the enumerated claims to state both an Eighth Amendment claim and an Equal Protection Clause claim under the United States Constitution, as well as a state equal protection claim under the Virginia Constitution. (*See* ECF No. 154, at 4 n.7, 7 n.8.) To date, neither the Court nor the parties have substantively addressed the Eighth Amendment issues raised by the above-referenced claims. Consequently, the Court must now address the Eighth Amendment claims raised by Chapman against all remaining Defendants. However, the Court previously granted summary judgment to Defendants Moore, Robinson, Shaw, Walker, and Geo on the Equal Protection aspects of Chapman's claims. Therefore, the Court need only address Chapman's Equal Protection claims against Defendants Smith and Kreitz, the two unserved defendants.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

4

                    (b) These actions by Defendants Smith and Kreitz violated Chapman's rights to equal protection under the both United States Constitution[6] and the Virginia Constitution.[7]

Claim Two:    Defendants Smith, Moore, and Shaw have "a black authors and Spanish language section with a plaque," in the "regular library," but "there are NO plaques for any other race in the world." (*Id.*)
(a) These actions violated Chapman's rights under the Eighth Amendment.
(b) These actions by Defendant Smith violated Chapman's rights to equal protection under both the United States Constitution and the Virginia Constitution.

Claim Three:   Defendants Smith, Moore, and Shaw "included Martin Luther King Jr. [Day] on the law library/library calendar . . . [but] did not include Robert E. Lee [Day] or Thomas "Stonewall" Jackson [Day], but closed the law library/library both dates." (*Id.* at 6–7.)
(a) These actions violated Chapman's rights under the Eighth Amendment.
(b) These actions by Defendant Smith violated Chapman's rights to equal protection under both the United States Constitution and the Virginia Constitution.

Claim Five:    Defendants Smith, Moore, and Shaw "had a black history program scheduled . . . the only race . . . given special treatment." (*Id.*)
(a) These actions violated Chapman's rights under the Eighth Amendment.
(b) These actions by Defendant Smith violated Chapman's rights to equal protection under both the United States Constitution and the Virginia Constitution.

Claim Six:    Defendants Smith, Shaw, Walker, and Geo "designed [the] recreation [area] for blacks only." (*Id.*)
(a) These actions violated Chapman's rights under the Eighth Amendment.

---

[6] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[7] Chapman invokes Article I, Section 11 of the Virginia Constitution as a basis for his state law racial discrimination claims. "The Virginia Constitution affords no greater protection to be free from government discrimination than the equal protection clause in the Fourteenth Amendment," consequently, "the same analysis applies" to both Chapman's state and federal racial discrimination claims. *Farley v. Clarke*, No. 7:15CV352, 2016 WL 8540135, at *18 n.25 (W.D. Va. Dec. 27, 2016) (citing *Lee v. York Cty. Sch. Div.*, 418 F. Supp. 2d 816, 835 (E.D. Va. 2006); *Archer v. Mayes*, 194 S.E.2d 707, 711 (Va. 1973)), *report and recommendation adopted*, No. 7:15CV352, 2017 WL 1049579 (W.D. Va. Mar. 17, 2017). The Court addresses Chapman's state and federal racial discrimination claims concomitantly. Thus, any decision that the Court renders as to one set of Chapman's "equal protection" claims applies equally to the other, unless otherwise specifically stated.

      (b) These actions by Defendant Smith violated Chapman's rights to equal protection under both the United States Constitution and the Virginia Constitution.

Claim Seven: Defendants Shaw, Robinson, and Geo "have a contract to air TVONE, an ALL Black TV channel, . . . in . . . [the] dayroom . . . TVONE's language is racist and carries sex offenders . . . there is NO ALL WHITE TV channel." (*Id.*) These actions violated Chapman's rights under the Eighth Amendment.[8]

### III. Analysis

It is both unnecessary and inappropriate to engage in an extended discussion of the lack of merit of Chapman's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))).

#### A. Eighth Amendment Claims

To state an Eighth Amendment, claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical

---

[8] Neither Defendant Smith nor Defendant Kreitz were named by Chapman in Claim Seven. Thus, as far as that claim is concerned, the equal protection issues have been settled and all that remains for the Court to consider are the Eighth Amendment issues raised by Chapman.

6

or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to avoid dismissal, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Chapman fails to satisfy either the objective or subjective prongs for any of his Eighth Amendment claims. Chapman fails to allege facts that plausibly suggest he sustained serious physical or emotional injury from any of the challenged conditions. *De'Lonta*, 330 F.3d at 634. Furthermore, in no instance does Chapman allege facts that indicate any defendant perceived that

his or her actions subjected Chapman to a substantial risk of serious harm. *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010) ("Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation." (citing *Moody v. Grove*, No. 89-6650, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).

Accordingly, the Eighth Amendment claims raised in Claims One (a), Two (a), Three (a), Five (a), Six (a), and Seven will be DISMISSED as they fail to state a claim and are frivolous.

### B. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, Chapman must allege facts that plausibly suggest: (1) "that he has been treated differently from others with whom he is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish[es] improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). If a plaintiff satisfies the above, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

8

### 1. Claim One (b)

In Claim One (b), Chapman alleges that Defendants Smith and Kreitz would not process his job application for a law clerk position because Chapman is white, and they only hire "Black and Hispanic" clerks. (ECF No. 97, at 6.) However, Chapman does not allege that the position he desired was actually open and available to new hires, much less that he applied for, or even attempted to apply for, it at an appropriate time and in an appropriate manner. Further, Chapman does not allege what the qualifications for the position were, much less that his own qualifications (which he recites multiple times) were indeed compatible with the job requirements. Finally, Chapman does not identify a similarly situated comparator who he maintains was treated differently than Chapman in applying for the law clerk position.[9]

Even if the Court were to ignore these basic issues, Chapman has offered nothing, aside from his own speculation and subjective beliefs, to indicate that any decision made by Defendants Smith and Kreitz was motivated by race in any way, much less that they harbored any animosity towards Chapman because he was white. Chapman's allegations concerning Smith and Kreitz are speculative and conclusory and fail to state a claim. *Twombly*, 550 U.S. at 555 (holding that a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level").

Accordingly, Claim One (b) will be DISMISSED WITHOUT PREJUDICE.

### 2. Claim Two (b)

In Claim Two (b), Chapman alleges that Defendant Smith has "a black authors and Spanish language section with a plaque," in the "regular library," but "there are NO plaques for any other

---

[9] Chapman alleges generally that a black inmate, who he maintains was less qualified than Chapman, was given the library clerk position. (*See* ECF No. 27, at 7.) However, Chapman fails to allege even the most basic details of this person's putative hiring, including when it occurred. Nothing in Chapman's pleadings indicates that he was actually in direct competition with this person for the same position at the same time.

race." (ECF No. 97, at 6.) Chapman avers that if LCC has a section for "black authors" and a "Spanish language" section marked by a plaque, there must be a similar "plaque for all other races" or there should be no plaques at all. (ECF No. 97, at 10.) Chapman maintains that "[t]here is nothing special about black authors." (*Id.* at 21.) He states that "[t]his is the United States of America," the "official language is English," and Spanish-speaking inmates should simply "Assimilate." (*Id.* at 22.) Chapman maintains that Defendant Smith is "setting out one race over another," (*see id.*), which he alleges is "offensive, and humiliating, and degrading to [him]." (ECF No. 27, at 9.)

The Court construes Chapman's claim to be one of "stigmatic injury." *See, e.g., Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017). In *Moore*, an African-American attorney sued the Governor of Mississippi, alleging that his "unavoidabl[e] expos[ure] to the state flag," which, in part, "depict[ed] the Confederate battle flag," stigmatized him, made him "feel like a second-class citizen," and caused him "physical and emotional injuries." *Id.* at 248–49.

In resolving the case, the Fifth Circuit determined that in order to plead a stigmatic injury, a "[p]laintiff must plead that he was personally subjected to discriminatory treatment." *Id.* at 249 (citations omitted). The court held that under the Equal Protection Clause, "exposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead an injury." *Id.* at 250 (citations omitted). This is because "the gravamen of an equal protection claim is differential governmental treatment, not differential governmental messaging." *Id.* (citations omitted).

In so holding, the court expressly rejected the plaintiff's attempt to infuse Establishment Clause[10] jurisprudence into a claim under the Equal Protection Clause because "the injuries protected against under the Clauses are different." *Id.* While the Establishment Clause "prohibits the Government from endorsing a religion, and . . . directly regulates Government speech if that speech endorses religion," "[t]he same is not true under the Equal Protection Clause." *Id.* In the end, the court held that the plaintiff lacked standing to bring his claim that the "flag's message" was "painful, threatening, and offensive," and affirmed the district court's dismissal of it because the plaintiff had failed to plead a personal injury. *Id.* at 249.

There are many parallels between Chapman's allegations and the claims asserted in *Moore*. Chapman claims that the plaques designating the Spanish-language and "black authors" sections of the prison library are "offensive, and humiliating, and degrading to [him]," (ECF No. 27, at 9), in much the same way that the plaintiff in *Moore* complained the Mississippi state flag was "painful, threatening, and offensive" to him, *Moore*, 853 F.3d at 249. As was the case with the plaintiff in *Moore*, who failed to show that he had been treated differently than anyone else who saw the flag, Chapman has failed to show that he has been treated any differently than anyone else who used the library. Chapman does not allege that he was prohibited from accessing any materials in the library. At most, he has shown that he was exposed to "differential governmental messaging." *Id.* at 250. However, without more, even "exposure to a discriminatory message . . . is insufficient to plead an equal protection case." *Id.* (citation omitted).[11]

---

[10] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[11] The United States District Court for the District of Columbia recently applied *Moore* in a similar fashion to dismiss an Equal Protection Clause challenge to a decision by the Mayor of the District of Columbia to paint "BLACK LIVES MATTER" on the street "just outside the White House." *Penkoski v. Bowser*, No. 20cv1519, 2020 WL 4923620, at *1, 5 (D.D.C. Aug. 21, 2020). There, a group of "non-black Christians," challenged the "mural" because they "perceive[d] it as

Accordingly, Claim Two (b) will be DISMISSED as it is legally frivolous and fails to state a claim.

### 3. Claim Three (b)

In Claim Three (b), Chapman alleges that Defendant Smith "included Martin Luther King Jr. [Day] on the law library/library calendar . . . [but] did not include Robert E. Lee [Day] or Thomas 'Stonewall' Jackson [Day]." (ECF No. 97, at 6–7.) Chapman's primary grievance seems to be that even though the library was closed on both Martin Luther King Day and Lee-Jackson Day, the Defendants failed to write Lee-Jackson Day on the library calendar as the reason for the second closure.[12] (ECF No. 27, at 11–12.) Chapman alleges that if Geo is to do business in Virginia, then it should be required to recognize Lee-Jackson Day. (*Id.* at 12.) Chapman further argues that LCC's failure to include Lee-Jackson Day on the calendar is "offensive, humiliating and degrading" to him, as a "native born Virginian." (*Id.* at 11–12.) Chapman notes that Martin Luther King was not from Virginia, and he claims that King "caused riots." (ECF No. 105, at 9.)

As an initial matter, it does not appear that Chapman specifically alleges that Defendant Smith decided when the library was to be closed or what specific holidays would be observed. Rather, it appears that someone at Geo may have been responsible for those decisions. Chapman did not expressly name Geo in Claim Three (b). But even if he had, Claim Three (b) would still fail for the same reasons that Claim Two (b) failed.

---

a sign that they [were] not welcome in the District." *Id.* at *1. Because the plaintiffs did not show that the Mayor had "subjected them to discriminatory treatment because of their race," the court held that any exposure they may have had to a "discriminatory message" was insufficient to establish standing, and their claim was dismissed. *Id.* at *5.

[12] Virginia formally recognized Lee-Jackson Day as a state holiday. Since Chapman filed his Particularized Complaint, Virginia has eliminated Lee-Jackson Day as a holiday. *See* 2020 Va. Acts ch. 418; Va. Code § 2.2-3300.

12

Chapman is again claiming a stigmatic injury because a holiday that he does not prefer is explicitly celebrated, and a (now former) holiday that he does prefer is overlooked. The decision of which holidays to include or exclude from a calendar can be construed as a message, much the same as a flag, a plaque, or a mural: it can speak to the relative value that the creator of the calendar places on the holidays it chooses to commemorate and those it chooses not to commemorate. At its base, Chapman's argument is that LCC has engaged in "differential governmental messaging" concerning the relative value it places on Martin Luther King Day and Lee-Jackson Day. As discussed above, "differential governmental messaging," without "differential governmental treatment," is not actionable under the Equal Protection Clause. *Moore*, 853 F.3d at 250. Here again, Chapman has failed to allege that he experienced differential treatment from anyone at LCC, much less that he was treated differently because of his race. Indeed, it appears that everyone at LCC was presented with the same calendar which observed the same holidays, even if the holidays observed were not the holidays Chapman would have chosen.

Accordingly, Claim Three (b) will be DISMISSED as it is legally frivolous and fails to state a claim.

### 4. Claim Five (b)

In Claim Five (b), Chapman alleges that Defendant Smith "had a black history program scheduled . . . the only race . . . given special treatment." (ECF No. 97, at 7.) Chapman avers that "[t]here is nothing special about black history that separates it from the history of any other race." (*Id.* at 10.) He goes on to state that "[j]ust because the US Congress designated [Black History Month] doesn't make it right." (*Id.*) Chapman makes clear that he is upset because there was not a scheduled observation for "Caucasian [history], Native American [history], North African [history], or any other race in the world." (ECF No. 105, at 9.) Chapman claims that he "cannot

relate to black history," and laments the absence of some other program "to which Chapman can relate." (*Id.* at 10.)

Here again, Chapman's claim sounds not in terms of a personal injury suffered due to discriminatory treatment, but in terms of a perceived stigmatic injury caused by governmental messaging that does not align with his viewpoint. *See generally Moore*, 853 F.3d 245. Chapman is upset because LCC has chosen to observe an event which Chapman "cannot relate to," and has opted not to institute an equivalent event, "to which Chapman can relate." As with its selection of which holidays to observe, LCC's decision to observe Black History Month and not to institute a similar observation for any other race can be construed as a message that speaks to LCC's relative values and priorities. But as stated above, exposure to "differential governmental messaging," without "differential governmental treatment," is not actionable under the Equal Protection Clause. *Id.* at 250. It appears that all the inmates at LCC were exposed to the same message about Black History Month that Chapman was, and Chapman has failed to allege that he was denied access to any services or materials that were available to other inmates or that he was otherwise subject to any treatment that was different than a similarly situated inmate due to LCC's decision to observe Black History Month.

Accordingly, Claim Five (b) will be DISMISSED because it is legally frivolous and fails to state a claim.

### 5. Claim Six (b)

In Claim Six (b), Chapman alleges that Defendant Smith "designed [the] recreation [area] for blacks <u>only</u>." (ECF No. 97, at 7.) Specifically, Chapman challenges the closure of a ballfield where Chapman and other white inmates liked to play softball. (ECF No. 27, at 16–17.) Chapman avers that the reconstituted "recreation yard is adequate if you are Black, but <u>NOT</u> for Chapman,

or if you are White." (*Id.* at 18.) He acknowledges that the stated purpose for the closure was institutional security, but he questions the wisdom and efficacy of the decision to close the ballfield, ultimately dismissing those concerns as "fake," and claiming that it "did nothing to stem the tide of drugs and cell phones coming into the facility." (ECF No. 97, at 19).

Chapman's claim fails for a number of reasons. Most notably, Chapman has not adequately alleged that he was treated differently than anyone else who used the reconstituted recreation area. When the field was closed, all inmates were apparently excluded from the closed portion, regardless of race. Moreover, Chapman does not allege that there are any portions of the reconstituted recreation area that he was categorically barred from going because of his race. As for Chapman's claim that the security concerns were somehow "fake" and the true motive for the closure was to discriminate against him and other white men, Chapman has offered nothing more than rank speculation on that point. *Twombly*, 550 U.S. at 555 (holding that a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level").

Accordingly, Claim Six (b) will be DISMISSED as it is legally frivolous and fails to state a claim.

### IV. Chapman's Rule 54(b) Motion

The Court now considers Chapman's submission entitled "MOTION TO AMEND OR ALTER THE JUDGMENT." (ECF No. 156.) Chapman does not expressly state which judgment he is challenging in his motion. (*See id.*) However, in his supporting memorandum, Chapman references Federal Rule of Civil Procedure 56, which governs motions for summary judgment. (*See* ECF No. 157, at 2.) As such, the Court understands Chapman's challenge to relate to the September 24, 2020 Memorandum Opinion and Order granting summary judgment to some, but not all, defendants on some, but not all, of Chapman's claims. (*See* ECF Nos. 154, 155.)

If a motion seeks reconsideration of an order before the entry of final judgment, the motion is governed by Rule 54(b). That rule provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).[13]

A district court retains the discretion to reconsider or modify a grant of a partially dispositive motion at any time prior to the entry of final judgment. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); Fed. R. Civ. P. 54(b)). Nevertheless, a court must exercise its discretion to consider such motions sparingly in order to avoid an unending motions practice. *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). Under Rule 54(b), a motion for reconsideration generally should be limited to instances including when

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension .... [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997). The Fourth Circuit has indicated that reconsideration is also appropriate where "a subsequent trial produces substantially different evidence" or "the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co.*,

---

[13] Chapman references Federal Rule of Civil Procedure 59(e) as the authority supporting his MOTION TO AMEND OR ALTER THE JUDGMENT. (ECF No. 156, at 1.) However, because the judgment that Chapman seeks to challenge was not a final judgment, Rule 54(b) is the proper vehicle for bringing this sort of contest.

845 F.2d 66, 69 (4th Cir. 1988)). Generally, the Court will not entertain a motion to reconsider which asks the Court to "rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101.

Chapman does not explicitly address any of the recognized grounds for relief in his Rule 54(b) Motion. Chapman's Rule 54(b) Motion and his supporting memorandum (ECF No. 157) are not clearly directed at a specific conclusion of the Court. Rather, Chapman states generally that:

> When a White man stands for his rights he's called racist. When Blacks do it, it is called heritage.
> Chapman has given a clear and concise explanation of a pattern and culture of racial Discrimination.
> This Court's 23 page typewritten Memorandum Order is premature, wrong, incoherent, disjointed, rambling, frivolous and constitutionally defective. With conclusory allegations and bare dismissals <u>NOT</u> rooted in facts.
> . . . .
> This dismissal is <u>prima facie</u> evidence of this Courts [sic] premature prejudicial bias against Chapman because he is a White inmate.
> Chapman wants this Court to know that "White Inmate Lives Matter."

(ECF No. 157, at 2, 5 (emphasis in original).)

The remainder of the Rule 54(b) Motion simply repeats conclusory assertions that Chapman has advanced throughout this proceeding or veers off into other general grievances that Chapman has, none of which directly relate to the adjudication of the summary judgment award in question. At bottom, Chapman essentially asks the Court to, "rethink what the Court had already thought through." *Above the Belt, Inc.*, 99 F.R.D. at 101. As such, Chapman has failed to identify any error sufficient to warrant relief under Rule 54(b). Accordingly, Chapman's Rule 54(b) Motion (ECF No. 156) will be DENIED.

## V. Conclusion

The Eighth Amendment claims raised in Claims One (a), Two (a), Three (a), Five (a), Six (a), and Seven will be DISMISSED. The Equal Protection claims under the United States and Virginia Constitutions raised in Claim One (b) will be DISMISSED WITHOUT PREJUDICE. The Equal Protection claims under the United States and Virginia Constitutions raised in Claims Two (b), Three (b), Five (b), and Six (b) will be DISMISSED. Chapman's Rule 54(b) Motion (ECF No. 156) will be DENIED. All of Chapman's other outstanding motions (ECF Nos. 95, 107, 109, 123, 125, 127, 130, 133, 135, 137, 139, 141, 143, 147, 148, 149, 150, and, 158) will be DENIED AS MOOT. This action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3 March 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge